# CHARLESTON

FIRST-NATIONAL BANK OF NORTHAMPTON *v.* CRAWFORD *et al.*

Submitted February 18, 1908.    Decided February 25, 1908.

1. VENDOR AND PURCHASER—*Rights of Vendees.*

   Where the owner conveys out of a large tract of land, by one deed, to each of several grantees, a specific number of acres as an undivided part thereof, and the entire tract contains a quantity in excess of the total acreage so granted, such grantees are entitled to have set off to them out of such larger tract the number of acres called for by the deed. (p. 643.)

41

2. SAME—*Shortage in Acreage—Abatement of Price.*

One who purchases by the acre the interest of one of said gran-
tees, and subsequently acquires the other interests in the whole of
the said tract, is not entitled, on account of shortage of acreage in
the entire tract, to have an abatement of purchase money from
such grantee. (p. 644.)

Appeal from Circuit Court, Boone County.

Bill by the First National Bank of Northampon against E.
T. Crawford and others. Decree for plaintiff, and defend-
ants appeal.

*Affirmed.*

LEFTWICH & BYRNSIDE, for appellants.

GEO. M. MCDERMIT and F. P. MURPHY, for appellee.

MILLER, JUDGE:

By deed of September 4, 1869, John E. Michener and
wife, in consideration of $1.50 per acre, conveyed with spe-
cial warranty unto Theodore Van Doran, J. H. Wm. Ket-
tler, J. T. Robinson, C. C. Cox and T. J. Simpson 7,100
acres of land as follows: "One undivided part thereof, it
being 600 acres of the same, to Theodore Van Doran; one
undivided part thereof, it. being 1,000 acres of the same, to
J. H. Wm. Kettler; one undivided part thereof, it being
1,500 acres of the same, to J. T. Robinson; one undivided
part thereof, it being 2,000 acres of the same, to C. C. Cox;
one undivided part thereof, it being 2,000 acres of the same,
to T. J. Simpson." The deed recites that the land thus con-
veyed is an undivided part of lot 26 of the Rutter and Etting
survey, and said lot is described by certain metes and bounds
therein. The 2,000 acres thus conveyed to said Cox came,
by sundry *mesne* conveyances, to the plaintiff, without ever
having been separately set off; and by deed of June 20, 1904,
the plaintiff conveyed it to the defendants, in consideration of
$20,000, $6,666.67 in cash and $13,333.33 to be paid June 1,
1905, evidenced by note of the defendants and secured by
vendor's lien reserved on the face of the deed. Although
this deed does not import a sale by the acre, the preliminary
contract, and the stipulation of counsel show that the sale
was in fact by the acre and not in gross.

The present suit was brought to enforce the lien reserved

to secure payment of the deferred purchase money. Upon demurrer overruled, answer filed and proofs taken, the circuit court of July 11,. 1906, pronounced a decree in favor of the plaintiff for $15,022.20 with interest and costs, and in default of payment decreed that the land be sold by commissioners appointed. It appears that the lot out of which Michener so conveyed the 7,100 acres to Cox and others was supposed to contain 9,600 acres; but by subsequent survey it was ascertained and by stipulation of counsel it has been agreed, that it contained only 9,176.45 acres, including an interlock of 305.45 with an adjoining lot. Excluding the interlock, there still remained 8,871 acres. Prior to the institution of this suit, the defendants had acquired by several deeds all other interests in said 9,600 acre tract, including the remaining interest therein of Michener, supposed to be 2,500 acres. In their answer, showing that they had thus acquired the interests of all parties in this entire tract, in which they had discovered this shortage of acreage, they asserted the right to have convened in this suit all the parties from whom they had acquired said several interests, and have the abatement of purchase money which they claim for such deficiency apportioned, according to the respective interests conveyed to them, among all their grantors. Having by said decree been denied this relief, or any abatement of purchase money, they have brought this appeal.

We think the decree was right. As we have seen, the deed from Michener to Cox and others conveyed out of lot 26 specifically 7,100 acres; and it is shown in the record, and stipulated by counsel, that at the date of that deed said lot contained at least 8,871 acres. The deed granted a specific number of acres to each of the several grantees—to Cox the specific quantity of 2,000 acres—leaving invested in Michener the remnant of acreage, whatever it might turn out to be. It is conceded that whatever right Cox acquired by the deed from Michener the bank subsequently acquired and conveyed to the defendants. What was this right? The sale by Michener to Cox and others was by the acre. Certainly as against their grantor, Cox and co-vendees were entitled to have set off to them out of the larger tract, jointly if not severally, the full number of acres called for in the deed. This proposition seems too plain for argument. It seems supported,

however, by *Johnson* v. *Tool,* (Ky.), 25 Am. Dec. 162; *Williamson* v. *Johnson,* 20 Ky. 252; *Fleming* v. *Harrison,* (Ky.), 4 Am. Dec. 691; *Blanc* v. *Duplessis,* 13 La. 213.  The conclusion deducible from these decisions  and from sound legal principles is that,  where  the owner conveys out of a larger tract a specific number of acres his several  grantees are  entitled  to  have  set  off to them  the number of acres called for.  If the grants are different in time and call for a specific number of acres out of a larger tract, and there is a deficiency in quantity, on principles of equity he who  is prior  in  time would be prior in right; the first alienee  would  be first entitled to have his quantity set off to him, and so on in the order of alienation, the loss from deficiency falling on the common grantor, or on his grantees in the inverse order of alienation. Upon the same principle applicable, where land is granted in severalty  to  different  grantees  subject to encumbrance, the equitable rule as affecting judgment liens  which  has  been carried into our statute (section 8, chapter 139, Code) is that "where the real estate liable to the lien of a judgment is more than sufficient to satisfy the same, and it  or any part of it has been aliened as between the alienees for value that which was aliened last shall  in  equity  be first liable, and so on with other successive alienations until  the  whole  judgment  is  satisfied; * * * * but any part of such real estate retained by the debtor himself shall be first liable to the satisfaction of the judgment."

But it is said by counsel for defendants that they have learned since  the  decree that Michener was in fact trustee for himself and Cox and others; that his deed of September 4, 1869, was intended to invest the grantees with the interests so held in  trust  for  them; and that, for this reason, the loss from deficiency in acreage should not be cast upon his heirs.  They think there is sufficient in the record  from  which this fact may  fairly  be  inferred.  But  certainly  no such issue was presented by the pleadings; nor do we think there is anything in evidence, documentary or otherwise, from which we  may legally infer such trusteeship.  What  the legal rights of the parties  would  be  if  the  fact  were as claimed, we are not called upon to decide.  The  question  is not presented.  We see nothing in the record to justify the conclusion of counsel.

Perceiving no error in the decree, we affirm it.

*Affirmed.*